UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIKE BRUNO, | ) | Case No. 4:09CV574 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| v. | ) | |
| | ) | |
| DR. J. KLINE, M.D., | ) | Magistrate Judge George J. Limbert |
| | ) | |
| Defendant. | ) | **REPORT &** |
| | ) | **RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |

The above-captioned case is before the Court on Dr. J. Kline's (Defendant) motion for summary judgment. ECF Dkt. #23. For the following reasons, the undersigned RECOMMENDS that the Court GRANT Defendant's motion for summary judgment and DISMISS the instant case in its entirety with prejudice at Plaintiff's cost. ECF Dkt. #23.

**I.    Facts**

The following factual allegations are taken from the complaint unless otherwise noted:

Plaintiff is an inmate at Trumbull Correctional Institution (TCI) in Ohio. ECF Dkt. #1 at ¶¶ 1-2. On August 16, 2004, Plaintiff dislocated his left shoulder while playing softball. *Id.* at ¶ 3. Dr. Stabile, of Correctional Medical Systems in St. Louis, Missouri, evaluated Plaintiff and recommended surgery. *Id.* at ¶ 19. On January 9, 2008, surgeons at The Ohio State University Medical Center (OSUMC) performed surgery. *Id.* at ¶ 21.

Defendant alleges OSUMC gave Plaintiff orders to keep his arm inert in a sling for six weeks and sent him to Corrections Medical Center (CMC) to recuperate. ECF Dkt. #23-1 at ¶ 4-5. Defendant alleges that Plaintiff returned to TCI on January 11, 2008 and was admitted to the infirmary,[1] where Defendant gave Plaintiff orders to wear his sling for six weeks and prescribed pain medication. *Id.* at ¶ 21. Defendant alleges Plaintiff had a surgical follow-up at CMC on

---

[1] Defendant alleges Plaintiff stayed in the infirmary from January 11, 2008 until January 16, 2008. ECF Dkt. #23-1 at ¶ 6, 8.

January 14, 2008 and was told to have the sutures out in three or four days. ECF Dkt. #23-1 at ¶ 7. Defendant alleges Plaintiff was discharged from the infirmary on January 16, 2008 with a prescription for pain medication. *Id.* at ¶ 8. Defendant alleges that Plaintiff returned on January 18, 2008 to have his sutures removed, and Defendant ordered Plaintiff to undergo a medical lay-in for 22 days with Plaintiff's arm in a sling at all times. *Id.* at ¶ 8. Defendant alleges that Plaintiff remained in the infirmary overnight and was given pain medication. *Id.* at ¶ 8. Defendant further alleges that an orthopedic specialist saw Plaintiff on January 28, 2008 and told Plaintiff to continue flexion and extension exercises. *Id.* at ¶ 9. Defendant alleges Plaintiff was readmitted to the infirmary on January 31, 2008, was given two types of pain medications, and was discharged on February 7, 2008, at which time Plaintiff was given another pain prescription for 90 days. *Id.* at ¶ 10. Defendant alleges Plaintiff was given a stronger pain medication for two five day periods starting on February 26, 2008 and March 14, 2008, respectively. *Id.* at ¶10. Defendant alleges that two CMC consultants saw Plaintiff on March 6, 2008, and told Plaintiff to continue flexion and extension exercises and begin range of motion exercises[2].

On April 24, 2008, OSUMC saw Plaintiff, reported sub-deltoid atrophy, and recommended that Plaintiff undergo supervised physical therapy. ECF Dkt. #1 at ¶ 24-25; ECF Dkt. #23-1 at ¶ 12; ECF Dkt. #25-4. OSUMC also ordered a follow-up in eight weeks. ECF Dkt. #1 at ¶ 25; ECF Dkt. #25-4.

Plaintiff contends that he was not seen in "medical"[3] from April 2008 through August, 2008. ECF Dkt. #1 at ¶ 24-28; ECF Dkt. #23-1 at ¶ 13. In April 2008 through August 2008, Plaintiff filed several letters of complaint with the Bureau of Medical Services, alleging that Defendant refused to provide adequate medical care. ECF Dkt. #1 at ¶ 26; ECF Dkt. #4, Ex. 61, 66, 74.

---

[2] Plaintiff mentions only one consultant in his complaint and specifies only that the consultant demonstrated "interim movement exercises", but Plaintiff does not contest Defendant's subsequently filed affidavit in this regard. ECF Dkt. #1 at ¶ 23.

[3] The Court concludes that Plaintiff's use of the term "medical" are references to the CMC. ECF Dkt. #23-1 at¶ 13.

Defendant alleges that on August 13, 2008, "medical" saw Plaintiff for sick call. ECF Dkt. #23-1 at ¶ 14. Defendant alleges a nurse asked him if he had been doing the exercises he was supposed to do, and Plaintiff indicated he was not, stating, "It wouldn't work." *Id.*

Defendant alleges that when the nurse asked him why he had not been to "medical" since April and he stated "because I didn't need to." *Id.* Defendant alleges that the nurse sent Plaintiff back to the CMC and told Plaintiff to tell them that he did not do the recommended exercises. *Id.*

Plaintiff alleges that on August 23, 2008 an OSUMC orthopedic specialist informed him that he could not be adequately evaluated since he never complied with the prescribed supervised therapy. ECF Dkt. #1 at ¶ 28. Defendant alleges that he suggested Plaintiff have a consultation with the CMC and the CMC suggested Plaintiff have a physical therapy consult for rotator cuff strengthening and range of motion, which took place on October 22, 2008.[4] ECF Dkt. #23-1 at ¶ 15. Plaintiff alleges that at the October 22, 2008 consultation, Dr. Valentin evaluated him, and expressed frustration at the noncompliance of his repeated orders for supervised physical therapy and worried Plaintiff would incur harm as a result. *Id.* Defendant alleges that during the October 22, 2008 appointment, it was indicated that the left upper extremity was within normal limits with normal strength. ECF Dkt. #23-1 at ¶ 15. On October 22, 2008, Plaintiff was prescribed a Thera-band for physical therapy and a chart demonstrating the exercises he was to perform. ECF Dkt. #1 at ¶ 30; ECF Dkt. #15. Plaintiff was issued a Thera-band and Defendant alleges Plaintiff performed exercises with the Thera-band from October 24, 2008 through November 3, 2008 but failed to appear for self-therapy on November 4, 2008. ECF Dkt. #23-1 at ¶ 16. Defendant alleges Plaintiff also failed to appear for therapy on December 19, 2008 and December 25, 2008. ECF Dkt.#23-1 at ¶17. Defendant alleges that he saw Plaintiff on October 28, 2008 and Plaintiff had some discomfort, but had good range of motion in the left shoulder and Plaintiff's strength and neurological exam were normal. ECF Dkt. #23-1 at ¶ 16. Defendant alleges that he suggested Plaintiff continue physical therapy or see him in 30 days if needed. ECF Dkt. #23-1 at ¶ 16.

---

[4] The record is unclear on what precise date Defendant ordered Plaintiff to go to the CMC. ECF Dkt. #23-1 at ¶ 15.

Plaintiff alleges that Defendant has repeatedly denied his request for Thera-bands and his request to see a specialist in order to determine his health status. ECF Dkt. #1 at ¶ 33.

## II.     Procedural History

On April, 17, 2009, Plaintiff filed a complaint against Defendant. *See* ECF Dkt. #1. On September 30, 2009, Defendant filed his answer. *See* ECF Dkt. #11. On May 26, 2010, Defendant filed his motion for summary judgment. ECF Dkt. #23. On July 9, 2010, Plaintiff filed a response to Defendant's motion for summary judgment. ECF Dkt. #25. On July 13, 2010, Defendant filed a reply in support of his motion for summary judgment. ECF Dkt. #26. On July 21, 2010, Plaintiff filed a response, or surreply to Defendant's reply. ECF Dkt. #27. On the same date, Defendant filed a motion to strike Plaintiff's surreply. ECF Dkt. #28.

## III.    Defendant's Motion to Strike

The undersigned recommends that the Court grant Defendant's motion to strike Plaintiff's "response" to Defendant's reply. ECF Dkt. #28. Neither the Federal Rules of Civil Procedure nor Local Rule 7.1 contemplate or permit a party to file a surreply without leave of court. Plaintiff in this case did not seek leave to file his surreply. ECF. Dkt. #27. Further, Plaintiff had notice of Defendant's arguments when he filed his response to Defendant's motion for summary judgment. ECF Dkt. # 23, 25. Moreover, Plaintiff shows no evidence of an intervening change in controlling case law, the discovery of new evidence, or any excusable neglect that would justify granting leave to file a surreply. Accordingly, the undersigned RECOMMENDS that the Court GRANT Defendant's motion to strike and strike Plaintiff's surreply. ECF Dkt. #28.

## IV.    Summary Judgement Standard of Review

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982). Summary judgment is proper "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the burden of showing there exists no genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This burden can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial. *See e.g., Catrett v. Celotex Corp.*, 477 U.S. 323 (1986); *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995). The evidence and all the inferences that can reasonably be drawn therefrom must be read in the light most favorable to the nonmoving party. *Id.*

If the moving party meets his burden, the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* Fed. R. Civ. P. 56(e). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

In a ruling on a motion for summary judgment, the court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. *Interroyal Cor. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Therefore, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the record specifically called to its attention by the parties. *Staats v. United States*, No. C-3-99-174, 2001 WL 1135056, *3 (S.D. Ohio Mar. 12, 2001), unreported; *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).

In this particular case, the undersigned notes at the outset Plaintiff's pro se status. In *Estelle v. Gamble*, the Supreme Court upheld an earlier unanimous decision that provided "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " 492 U.S. 97, 106 (1976) (dismissing pro se prisoner § 1983 complaint for failure to state a claim for which relief can be granted). The Sixth Circuit has since opined that: "pro se plaintiffs are not automatically entitled to take every case to trial. As this court has noted, the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

-5-

**V.    Law and Analysis**

When prisoners challenge the conditions of their confinement, including allegations of inadequate medical care, the Supreme Court requires that the conditions constitute "cruel and unusual punishment" in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" and "punishments grossly disproportionate to the severity of the crime." *Estelle*, 429 U.S. at 103. The Supreme Court has held that individual[s] sued pursuant to § 1983 must have demonstrated "deliberate indifference" to "serious medical needs." *Estelle*, 429 U.S. at 104 (1976). This standard has both a subjective and an objective component. *Farmer v. Brennen*, 511 U.S. 825, 846 (1970).

Subjectively, the defendant must have consciously known of the deprivation. Inhumane prison conditions alone do not constitute an Eighth Amendment violation. *Wilson v. Seiter*, 501 U.S. 294, 310 (1991). In *Farmer*, the Supreme Court adopted "subjective recklessness" as an appropriate definition for deliberate indifference, meaning defendant must have been aware of facts from which an inference could be drawn that a substantial risk of serious harm exist, and he must also draw that inference. *Farmer*, 511 U.S. at 837. It is sufficient for an inmate to show that the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Id.* at 842.

Objectively, the deprivation must be "sufficiently serious" to violate the constitution. *Id.* at 825. The Supreme Court has held "sufficiently serious" to mean the claim must address a basic human need, "such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). In other words, the "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.' " *Farmer*, 511 U.S. at 837 (1994), quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, to the extent that conditions are restrictive and even harsh, they are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347 (1981).

On January 9, 2010, Plaintiff received corrective surgery for his shoulder injury. ECF Dkt. #1 at ¶ 21; ECF Dkt. #23 at 2. Here, Plaintiff claims his post-operation lack of pain medication, physical therapy, and consultation with a specialist constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. ECF Dkt. #1 at ¶ 27, 32, 33; ECF Dkt. #23 at 2. Plaintiff claims that Defendant's conduct resulted in both physical and psychological damage. ECF Dkt. #1 at ¶ 38, 39, 45, 46.

However, Plaintiff acknowledges that he did receive some post-operative medical care, including pain medication, medical advice about how to exercise his arm for recovery, and a tool for conducting his own physical therapy. ECF Dkt. #1 at ¶ 21, 23, 31; ECF Dkt. #23 at 3. Defendant stated in his affidavit, and Plaintiff does not present evidence otherwise, that Plaintiff was prescribed various pain medications on multiple occasions. ECF Dkt. #23-1 at ¶ 6, 8, 10. Plaintiff also does not offer evidence to contest Defendant's statement in Defendant's affidavit that he ordered Plaintiff to keep his arm in a sling for six weeks after surgery, to perform flexion, extension, and range of motion exercises for therapy, and eventually to begin self-therapy using the Thera-band. ECF Dkt. #23-1 at 6, 9, 10, 15. The parties also do not contest that Plaintiff failed to perform the self-therapy Defendant ordered and failed to attend three therapy sessions. ECF Dkt. #23-1 at 14, 17.

Based on the foregoing evidence, the undersigned recommends that the Court find that Defendant did not show deliberate indifference to Plaintiff's serious medical needs, as Defendant has demonstrated that he gave Plaintiff extensive, on-going care, and thus he was not deliberately indifferent to Plaintiff's medical needs. *Wyatt v. Hart*, No. 99-5152, 1999 WL 1253104, at *2 (6th Cir. Dec. 17, 1999) (where the court upheld summary judgment because the plaintiff did receive medical care, though it was not the extent of care he desired and "The Eighth Amendment protects Wyatt from conditions that are health threats; it does not shield him from conditions that cause mere discomfort"[5]); *Estelle*, 429 U.S. at 97 (where the Court upheld the district court's

---

[5] The Court notes that the plaintiff in *Wyatt* failed to show up for a medical appointment on at least one occasion. Here, Defendant asserts that Plaintiff missed three therapy sessions. ECF Dkt. #23-1 at ¶ 17.

-7-

dismissal of Plaintiff's claim for failure to provide adequate medical care as "not cognizable" under § 1983 because Plaintiff had attended seventeen medical appointments).

"Under the Eighth Amendment, a prisoner is not entitled to the best care possible." *Tucker v. Ganshimer*, No. 1:07CV1035, 2008 WL 4452722, at *7 (N.D. Ohio 2008). In *Tucker*, the court held that a prison official's decision to provide medical care in-house rather than consult with an outside specialist was not "cruel and unusual punishment," but merely a medical judgment. *Id.* "The prisoner's right to medical care is not to the type or scope of medical care which he personally desires." *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975); *Gonzales v. Wright*, No. 9:06CV1424, 2010 WL 681323 (N.D.N.Y. Feb. 23, 2010) ("Turning to the deliberate indifference element . . . . Although Plaintiff may have desired some other type of medicine, that desire would have, at the very best, demonstrated negligence, not deliberate indifference"). Plaintiff in this case fails to demonstrate that Defendant showed deliberate indifference, but rather he expresses disagreement with Defendant's chosen path of treatment. This is not an actionable claim under the Eighth Amendment. *Estelle*, 429 U.S. at 107 (where Plaintiff wanted an x-ray and the Court held for the defendant because it found an alleged error in medical judgment was not a constitutional violation).

## VI. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Defendant's motion to strike Plaintiff's "response" to Defendant's reply ECF Dkt. #28. . Further, the undersigned RECOMMENDS that the Court GRANT Defendant's motion for summary judgment and DISMISS the instant case in its entirety with prejudice at Plaintiff's cost. ECF Dkt. #23.

Date: August 12, 2010  /s/ George J. Limbert
GEORGE J. LIMBERT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).