# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MIKE BRUNO, | ) | CASE NO. 4:09CV574 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| DR. J. KLINE, M.D., et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge George J. Limbert (Doc. No. 30) with respect to defendant's motion for summary judgment.[1] Plaintiff filed objections to the R&R (Doc. No. 32) and defendant filed a response to the objections (Doc. No. 33). The Court has conducted its *de novo* review of the matters raised in the objections. Fed. R. Civ. P. 72(b)(3). For the reasons discussed below, the R&R is **ACCEPTED IN PART**,[2] summary judgment is granted in favor of defendant, and this case is **DISMISSED** with prejudice.

---

[1] The motion for summary judgment is Doc. No. 23. Plaintiff filed his opposition brief (Doc. No. 25) and defendant filed his reply (Doc. No. 26). Thereafter, without leave of Court, plaintiff filed a response to the reply. (*See* Doc. No. 27.) Defendant moved to strike that response; on page 4 of the R&R, it is recommended that defendant's motion to strike be granted. Plaintiff filed no opposition to this recommendation and it is **ADOPTED**. The motion to strike (Doc. No. 28) is **GRANTED**.

[2] The R&R recommends that dismissal of this action be at plaintiff's costs. The Court **REJECTS** that portion of the R&R. Dismissal will be with each party to bear its own costs.

## I. BACKGROUND

On March 17, 2009, plaintiff filed a pro se complaint under 42 U.S.C. § 1983 against Dr. J. Kline, D.O. ("Dr. Kline")[3] asserting one count of deliberate indifference to serious medical needs in violation of the Eighth Amendment to the U.S. Constitution.[4] The facts underlying his claim are summarized below.

Plaintiff is an inmate at the Trumbull Correctional Institution ("TCI") in Leavittsburg, Ohio. (Compl. ¶¶ 1-2.) On or about August 16, 2004, he suffered a dislocated left shoulder during a recreational softball game. (*Id*. ¶ 17.) Thereafter, he had recurrent dislocations for which he was sent for several consultations, ultimately resulting in a recommendation for surgery. (Kline Aff., Doc. No. 23., ¶ 3; Compl. ¶ 19.) Plaintiff voluntarily underwent the shoulder surgery on January 9, 2008,[5] at Ohio State University Medical Center ("OSU-MC") and afterwards was sent to Corrections Medical Center ("CMC") to recuperate. (Compl. ¶ 21; Kline Aff. ¶ 4.) He was returned to TCI on January 11, 2008 and was admitted to the infirmary. (Kline Aff. ¶ 6.)

The gravamen of plaintiff's complaint is that doctors at OSU-MC prescribed physical therapy after his surgery along with pain medication (Compl. ¶¶ 21, 22, 23), but that Dr. Kline, who took over plaintiff's care at TCI, repeatedly refused to prescribe adequate medication and/or physical therapy (Compl. ¶¶ 26, 33). Plaintiff alleges that he "was deprived of unimpeded access to prescribed pain medication, physical therapy and follow-up." (Compl. ¶ 37.) He further alleges that he continues to suffer "excruciating pain" and "psychological harm" due to "fear of

---

[3] Plaintiff originally sued two defendants, Dr. J. Kline, D.O. (improperly identified as an M.D.) and R.N. Ramon Perez. (*See* Doc. No. 1.) By Order dated June 17, 2009, defendant Perez was dismissed. (*See* Doc. No. 6.)

[4] Plaintiff characterized his claim as a violation of his "right to unimpeded medical care." (*See* Complaint, page 5.)

[5] Handwritten consultation notes submitted by plaintiff in support of his opposition to the summary judgment motion make clear that this was arthroscopic surgery.

becoming disabled for the rest of his life." (Compl. ¶¶ 38, 39.) Plaintiff exhausted all of his available grievance remedies at the prison. (Compl. ¶ 34.)

Dr. Kline, who provides medical services at TCI, filed a motion for summary judgment accompanied by an affidavit outlining in detail the medical treatment given to plaintiff.

Dr. Kline attests that, initially, plaintiff's post-surgery discharge instructions from OSU-MC were "to keep the arm in a sling and to have no activity involving the left upper extremity for six weeks and only out of the sling to shower." (Kline Aff. ¶ 5.) Upon plaintiff's return to TCI's infirmary on January 11, 2008, Dr. Kline ordered that he was to wear his sling for six weeks and take pain medication (Tylenol #3), a prescription that was renewed at least twice before he left the infirmary. (*Id.* ¶ 6.) He had a surgical follow-up on January 14, 2008 and was told to have the sutures out in three or four days. (*Id.* ¶ 7.)

Plaintiff was discharged from TCI's infirmary on January 16, 2008 with an order for Tylenol #3. He returned to have his sutures removed on January 18, 2008. At that time, Dr. Kline ordered a medical lay-in for 22 days with his arm in the sling at all times. Plaintiff remained in the infirmary overnight and he was given Motrin for pain. (Kline Aff. ¶ 8.)

On January 24, 2008, plaintiff was "seen again by ortho" and was told to continue wearing his sling and doing exercises "which were flexion and extension movement of the elbow." (Kline Aff. ¶ 9.) Ice packs were also recommended. (Response to Motion for Summary Judgment, Doc. No. 25, Exh. A.)

On January 31, 2008, plaintiff was readmitted to the infirmary and given Tylenol #3 for 72 hours; on February 1, 2008, that pain medication order was changed to Ultram. He was discharged from the infirmary on February 7, 2008 and started on Indocin for 90 days. He was

3

ordered a stronger pain medicatin, Toradol, on February 26, 2008 for five days and again on March 14, 2008 for another five days. (Kline Aff. ¶ 10.)

Plaintiff was seen at CMC on March 6, 2008 by two different consultants and was told to continue his flexion/extension exercises of the elbow and to begin "formal" physical therapy in the form of range of motion exercises to strengthen his shoulder. (Kline Aff. ¶ 11; Doc. No. 25, Exh. B.) At his next appointment on April 24, 2008, it was recommended that he have "supervised" physical therapy for shoulder strength and motion and to return in two months. (*Id.* ¶ 12; Doc. No. 25, Exh. D.) Thereafter, he was not seen in medical at TCI from April to August 2008 and there is no record indication that he requested sick-call with either nurses or doctors during that time period. (*Id.* ¶ 13.)

On August 13, 2008, plaintiff was seen for nurse's sick call. At that time, he demonstrated the exercises he had been told to do. When asked by the nurse if he was doing the exercises, plaintiff responded in the negative, stating that it "wouldn't work." When asked why he had not been to medical since April, plaintiff indicated that it was "because I didn't need to." He was told that he would be sent back to CMC and that he should tell them he was not doing the recommended exercises. (Kline Aff. ¶ 14.)

Dr. Kline ordered that plaintiff be sent to CMC for a consultation and, at that appointment, it was recommended that he have a physical therapy consult for rotator cuff strengthening and range of motion. The physical therapy consult took place on October 22, 2008. The examination indicated that the left upper extremity was within normal limits with normal strength. For the first time, it was ordered that he begin exercises with red Therabands and he was given a chart to demonstrate what he was to do. (Kline Aff. ¶ 15.)

4

The orders from CMC were received by medical at TCI and the exercises began on October 24, 2008. The exercises continued twice a day through December 25, 2008.[6] Dr. Kline saw the plaintiff on October 28, 2008, at which time he reported some discomfort and that he was doing the Theraband exercises. Kline found that plaintiff had good range of motion in his shoulder and good strength. The neurological examination was normal. Plaintiff was told to continue the physical therapy as needed and to see Dr. Kline in 30 days, if needed. (Kline Aff. ¶¶ 16, 17.)

Dr. Kline reports that there are no further complaints in TCI's medical records with regard to plaintiff's left shoulder, although he was seen on April 17 and May 11, 2009 for complaints about injury to his right shoulder. A consultation on that shoulder was ordered on May 11, 2009. (Kline Aff. ¶ 18.)

## II. DISCUSSION

### A.    The Standard of Review

Under Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(C).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[6] Plaintiff failed to show for his therapy on November 4, on December 19 (first session) and December 25 (second session).

law." Fed. R. Civ. P. 56(a). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### B. Analysis of the Objections and Response

Plaintiff's complaint alleges an Eighth Amendment violation of his "right to unimpeded medical care." In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court concluded that the Eighth Amendment was violated by acts of "deliberate indifference to serious medical needs of prisoners[.]" *Id*. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (italics in original; citations and internal quotation marks omitted). Deliberate indifference is "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1970)). The deliberate indifference standard contains both an objective and a subjective component. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). The objective component requires proof of "a 'sufficiently serious' medical need." *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Farmer*). The subjective component "requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" *Id*. (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir.2001) (citing *Farmer,* 511 U.S. at 837)).

The R&R recommends that summary judgment be granted in favor of defendant because (1) plaintiff failed to show that defendant exhibited deliberate indifference to his serious medical needs, and (2) defendant, in fact, "demonstrated that he gave [p]laintiff extensive, on-going care, and thus was not deliberately indifferent to [p]laintiff's medical needs." (R&R at 7,

citing *Wyatt v. Hart*, No. 99-5152, 1999 WL 1253104, at *2 (6th Cir. Dec. 17, 1999); *Estelle v. Gamble*, 492 U.S. 97 (1976).)

Plaintiff's objections raise little by way of substance; instead, he challenges details of the R&R that do not create "material" factual disputes. For example, in footnote 2, the R&R states that plaintiff mentions only one consultant in the complaint; plaintiff objects and points to paragraphs 22 and 23 of the complaint as support for his assertion that "two specialists" had recommended "formal" physical therapy (a CMC orthopedic specialist and a CMC physical therapist). (Objections, Doc. No. 32, at 1-2.) Plaintiff also asserts that, on April 24, 2008, "another CMC orthopedic specialist" diagnosed him with "sub-deltoid atrophy" and ordered "supervised" physical therapy. (Objections, at 2.) These are objections that are not material, since Dr. Kline acknowledges that plaintiff was seen by consultants (on Dr. Kline's orders) and that they recommended physical therapy exercises to assure mobility of the elbow and to strengthen the rotator cuff of the shoulder.

Plaintiff also disputes Dr. Kline's assertion that he told a nurse at TCI in August 2008 that he was not doing his exercises and that he had not asked for any medical appointments between April and August because he did not need them. Even if this Court takes as true that plaintiff never made those statements to the nurse, that does not create a material factual dispute in the face of the entire record of all the medical care he received.

The only material objection that plaintiff makes is to the R&R's failure to address plaintiff's complaint that Dr. Kline failed to supply him with "formal" and "supervised" physical therapy. However, as properly argued by the defendant in his response to plaintiff's objections, the issue is not whether Dr. Kline provided "proper" physical therapy. The issue is whether the

treatment and follow-up care which Dr. Kline provided, either personally or through his orders for consultation, amounted to "deliberate indifference" to serious medical needs.

Plaintiff cannot meet the standard of "deliberate indifference." Although plaintiff may not have received the "formal" and/or "supervised" physical therapy that he believed he should have received, he did receive consistent, sustained follow-up care, including pain medication for some time after surgery. Further, even if he were able to show *negligent* medical care, and the Court expressly finds that he has not and cannot show negligence, that would not rise to the level of a constitutional tort required to recover under Section 1983 and the Eighth Amendment.

### III. CONCLUSION

For the reasons discussed above, plaintiff has failed to meet his burden of proof to overcome defendant's motion for summary judgment. Having conducted a *de novo* review of the portions of the R&R objected to by plaintiff, the Court hereby **ADOPTS** the recommendation of the magistrate judge to **GRANT** defendant's motion for summary judgment and the Court will issue such order by separate judgment entry. As already noted, the Court **REJECTS** the recommendation that dismissal should be at plaintiff's costs. Instead, each party will bear its own costs. Finally, as recommended by the magistrate judge, Doc. No. 28 is **GRANTED**.

**IT IS SO ORDERED**.

Dated: January 12, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**